UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HEATHER DIODENE** | **CIVIL ACTION NO.:** |
| **VERSUS** | **SECTION:** |
| **MARLIN N. GUSMAN**<br>     **SHERIFF OF ORLEANS PARISH** | |
| | **JUDGE**: |
| **CHAZ RUIZ**<br>     **WARDEN, ORLEANS JUSTICE CENTER**<br>     **AT ORLEANS PARISH PRISON** | **MAGISTRATE:** |
| **DEPUTY JUSTIN ANDREWS**<br>     **OFFICER, ORLEANS JUSTICE CENTER**<br>     **AT ORLEANS PARISH PRISON** | |
| **SERGEANT CHRIS RUBIO**<br>     **OFFICER, ORLEANS JUSTICE CENTER**<br>     **AT ORLEANS PARISH PRISON** | |

## COMPLAINT

**NOW INTO COURT**, through undersigned counsel comes, HEATHER DIODENE ("Diodene" or"Plaintiff") who respectfully represents that:

## JURISDICTION AND VENUE

1.

This action is brought pursuant to 42 U.S.C. § 1983 and 1988 for claims arising under the Fourteenth Amendment of the Constitution of the United States.

2.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

3.

Plaintiff's claims for declaratory relief are authorized by 28 U.S.C. §§ 2201 and 2202.

1

4.

The events or omissions giving rise to the claims occurred in the Eastern District of Louisiana. As a result, venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

**PARTIES**

5.

Plaintiff HEATHER DIODENE is a person of the full age of majority and resident of St. Bernard Parish, State of Louisiana. At all times relevant to this Complaint, she was working at the Orleans Justice Center and/or Orleans Parish Prison (herein after referred to as "OJC and/or OPP").

6.

Defendant MARLIN N. GUSMAN is the Sheriff for the Parish of Orleans, State of Louisiana, and was Sheriff at all times relevant to this Complaint. He is responsible for the overall administration of all facilities part of OJC and/or OPP, including the provision of security, health, and medical services to persons in custody. He is responsible for the policies, practices, and customs of OJC and/or OPP as well as the hiring, training, control, supervision, and discipline of guards and other personnel. Defendant Gusman shared responsibility for the care and supervision of Plaintiff HEATHER DIODENE on all dates relevant to the Complaint. He is sued individually and in his official capacity.

7.

Defendant CHAZ RUIZ was Warden of OJC and/or OPP. He shared responsibility for the overall administration of OJC and/or OPP, including the provision of security, health, and medical services to persons in custody. He shared oversight of the policies, practices, and customs of OJC and/or OPP as well as the hiring, training, control, supervision, and discipline of guards and other personnel. Defendant Ruiz also shared responsibility for the care and

supervision of Plaintiff HEATHER DIODENE on all dates relevant to the Complaint. He is sued individually and in his official capacity.

8.

Defendant JUSTIN ANDREWS is a deputy and guard employed by OJC and/or OPP. He was responsible for executing the policies, practices, and customs of OJC and/or OPP, including proper supervision of all personnel and employees of OJC and/or OPP. Defendant Andrews shared responsibility for the care and supervision of Plaintiff, HEATHER DIODENE on all dates relevant to this complaint.

9.

Defendant CHRIS RUBIO is a sergeant and guard employed by OJC and/or OPP. He was responsible for executing the policies, practices, and customs of OJC and/or OPP, including proper supervision of all personnel and employees of OJC and/or OPP. Defendant Rubio shared responsibility for the care and supervision of Plaintiff, HEATHER DIODENE on all dates relevant to this complaint.

**STATEMENT OF FACTS**

10.

Orleans Parish Prison (OJC and/or OPP) maintains conditions posing a substantial risk of serious harm to personnel and employees; an institutional custom of guards failing to enforce the safety protocol system in place; inadequate staffing; and an institutional custom of guards leaving their posts. Taken together, these conditions directly result in high levels of violence in OJC and/or OPP. Defendants Sheriff Gusman and Ruiz have been repeatedly put on notice that these conditions in OJC and/or OPP cause inmate violence, through inmate complaints and lawsuits, a 2009 findings letter from the United States Department of Justice, and most recently the consent judgment, signed personally by Sheriff Gusman, rendered June 6, 2013 as the outcome of the

litigation in the United States District Court for the Eastern District of Louisiana entitled *Lashawn Jones, et al., and The United States of America v. Marlin Gusman*, Civil Action No.: 2:12-cv-00859, Section "I". Despite substantial notice of persistent unconstitutional conditions at OPP and/or OJC, Defendants Gusman and Ruiz have failed to take the action necessary to remediate these conditions. As a result of these conditions at OJC and/or OPP, and Defendants Gusman and Ruiz' deliberate indifference to the substantial risk of serious harm, on March 10, 2020, Plaintiff Heather Diodene, a licensed practical nurse (LPN) at OJC and/or OPP, was viciously attacked in the Internal Processing Center by Joseph Cooks, a new inmate housed in the OJC and/or OPP.

11.

At all times relevant to this complaint, Plaintiff was an employee of Wellpath, LLC., a for-profit healthcare provider for prisons, which was contracted by Orleans Parish Sheriff's Office on the date of this incident.

ATTACK OF PLAINTIFF

12.

On or about March 10, 2020 at approximately 8:30 p.m., Plaintiff was working in the OJC and/or OPP Internal Processing Center as a Licensed Practical Nurse (LPN).

13.

At approximately 9:00 p.m., Plaintiff discovered that Joseph Cooks, an inmate at OJC and/or OPP DOC #584584, was standing directly in front of Plaintiff, approximately three feet away from where Plaintiff was standing.

14.

At all times herein, Mr. Cooks had impermissibly entered the restricted area that was designated for medical staff only in which no inmates were ever allowed despite the fact that he was supposed to be heavily supervised, restrained, and/or in the in a holding cell due to his violent

4

history and homicidal/suicidal state.

15.

Plaintiff loudly informed Mr. Cooks that he was not supposed to be in the restricted area and that he needed to go back to the general holding area. However, Mr. Cooks ignored Plaintiff's instructions and proceeded to stand in front of Plaintiff, staring at her. Again, Plaintiff asked Mr. Cooks if he needed help with something to which Mr. Cooks replied, "You know I could f--k your world up right now?" Plaintiff advised him again that he was not supposed to be in this area and instructed him to exit.

16.

Suddenly and without warning, Mr. Cooks lunged for Plaintiff's I.D. badge attached to the top of her scrubs. Plaintiff quickly grabbed the I.D. back from Mr. Cooks at which point he told Plaintiff, "I could kill you right now".

17.

In response to the threats from Mr. Cooks, Plaintiff began to look around for a Deputy to help her but there were no deputies in the general vicinity. Finally, out the corner of her eye, Plaintiff could see Deputy Andrews on the other side of the cubicles and yelled, "Deputy Andrews, I need your help!"

18.

Mr. Cooks violently attacked Plaintiff by wrapping his hands around her neck and proceeded to choke the Plaintiff. Plaintiff began to lose consciousness as Mr. Cooks tightly squeezed her neck. Mr. Cooks continued his assault by dragging her across the floor and pushing her into a squatted position continuing to choke her.

19.

An unreasonable period of time passed until finally Plaintiff heard Deputy Andrews and Sergeant Rubio telling the inmate, Mr. Cooks, to let go of plaintiff's neck.  However, Mr. Cooks began to squeeze her neck tighter and put his full body weight on her. Deputies broke several of Inmate Cooks' fingers in order to subdue his attack.

20.

As a result of the attack on Plaintiff, she suffered physical injury, emotional distress, pain and suffering, and lost wages. Plaintiff sustained severe injuries to her neck and back. Plaintiff has received epidural steroid injections and has been referred for cervical and lumbar surgeries due to the herniation at L5-S1 and instability of her cervical spine at C4-C5. Plaintiff also continues to suffer emotionally and psychologically from the trauma of her violent attack. At all times herein, Plaintiff's protected life interest, under the Fourteenth Amendment due process was threatened due to governmental action/inaction.

### DEFENDANTS WERE ON NOTICE OF THE CONDITIONS LEADING TO THE ATTACK OF PLAINTIFF

21.

On information and belief, Defendants had direct knowledge that Inmate Joseph Cooks was a violent offender. On March 10, 2020, Mr. Cooks was arrested and brought to OJC and/or OPP charged with attempted armed robbery, second degree kidnapping, theft under one thousand dollars, and possession of heroin.

22.

On information and belief, Defendants had direct knowledge that Mr. Cooks had multiple arrests for violent offenses including Simple Assault in March 2012, Resisting an Officer in August 2014, Aggravated Flight from an Officer in June 2015, and Attempted Simple Robbery and Resisting an Officer in April 2018.

23.

On information and belief, Defendants had direct knowledge that Mr. Cooks was homicidal and/or suicidal on the night of this vicious attack. Plaintiff contends that Defendants violated protocol procedures dealing with homicidal and/or suicidal inmates by not isolating him in a holding cell, cuffing him to a chair or stool while being interviewed by medical staff, and/or escorting him to see medical staff in the triage area of IPC while Mr. Cooks was on the intake main floor of OJC and/or OPP.

24.

On information and belief, Defendants had direct knowledge that on March 10, 2020, there was an excess number of prisoners to guards ratio due to being short-staffed. Plaintiff contends that Defendants violated protocol procedures by not placing all inmates in a holding cell and only bringing the inmates out one to three at a time when a deputy is alone for the safety and welfare of both inmates, staff and third parties.

25.

On information and belief, Mr. Cooks had been scouting the IPC, waiting for an opportunity to assault Plaintiff. Plaintiff contends that Defendants had direct knowledge of the unreasonably dangerous condition of the IPC and holding area due to a lack of security with no security doors or protective glass dividing the inmates from the medical staff. Plaintiff further contends that Defendants Gusman, Ruiz, and Rubio had direct knowledge that Deputy Andrews, on information and belief, failed at performing his supervisory duties by leaving his post at the inmate intake floor of OJC and/or OPP which left inmates alone and medical stuff vulnerable to attacks.

26.

Therefore, Plaintiff avers that the defendants, Gusman, Ruiz, Andrews, and Rubio were state actors acting under the color of law that created or increased the danger to Plaintiff. Furthermore, Defendants acted with deliberate indifference to the Plaintiff's safety and wellbeing.

27.

Defendants Gusman and Ruiz were on notice that they were in charge of the direct custody and control of violent offenders which created a substantial risk of inmate on third party violence at OJC and/or OPP.

28.

Defendants Gusman and Ruiz were on notice that failure to properly supervise inmates created a substantial risk of inmate on third party violence at OJC and/or OPP.

29.

Defendants Gusman and Ruiz were on notice that the institutional practice of deputies failing to monitor their posts created a substantial risk of inmate on third party violence at OJC and/or OPP.

## STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION: SUBSTANTIVE DUE PROCESS VIOLATION UNDER 42 U.S.C. § 1983 AND THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AGAINST ALL DEFENDANTS

30.

Plaintiff re-alleges paragraphs 1-29 of this complaint and further states that:

31.

Defendants knew that conditions in OJC and/or OPP constituted a substantial risk of serious harm to Plaintiff's health and safety and that they violated Plaintiff's clearly established Fourteenth Amendment right to be free from danger created or increased by state actors who act with deliberate indifference.

32.

Defendants chose not to respond to the conditions in OJC and/or OPP that constituted a substantial risk to Plaintiff's health and safety, despite notice from the federal decree and consent judgment highlighting those substantial risks and prescribing mandatory procedures to address said risks.

33.

Defendants chose not to respond to the conditions in OJC and/or OPP constituting a substantial risk to Plaintiff's health and safety by conduct including but not limited to: a) failing to have a staffing plan that provided adequate supervision over inmates; b) failing to train deputies in OJC and/or OPP, which caused conditions constituting a substantial risk to Plaintiff's health and safety; and c) failing to supervise deputies in OJC and/or OPP, which caused conditions constituting a substantial risk to Plaintiff's health and safety.

34.

Defendants affirmatively placed Plaintiff, Heather Diodene, in a position of danger that Plaintiff would not otherwise have faced. Plaintiff contends that 1) the defendants and/or state actors, created or increased the danger to Plaintiff, and 2) the defendants and/or state actors acted with deliberate indifference. Plaintiff further contends that the defendants knew there was 1) an unusually serious risk of harm, 2) defendants had actual knowledge of and/or willful blindness of that elevated risk, and 3) defendants failed to take obvious steps (i.e. follow protocol) to address that known, serious risk.

35.

Defendants' failure to respond to the conditions in OJC and/or OPP was an objectively unreasonable response to a known, substantial risk.

36.

Defendants' failure to respond to the conditions in OJC and/or OPP that constituted a substantial risk to Plaintiff's health and safety caused Plaintiff's injuries.

37.

Defendants acted with deliberate indifference toward a substantial risk to Plaintiff's health and safety.

### SECOND CAUSE OF ACTION: FAILURE TO PROTECT IN VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AGAINST ALL DEFENDANTS

38.

Plaintiff re-alleges paragraphs 1-29 of this complaint and further states that:

39.

Defendant Gusman, as Sheriff and head of OJC and/or OPP and Defendant Ruiz, as head of OJC and/or OPP, were the policymakers for the OJC and/or OPP.

40.

As policymakers, Defendants Gusman, and Ruiz were responsible for the training of deputies working in the OJC and/or OPP.

41.

Defendants Gusman, and Ruiz failed to adequately train OJC and/or OPP deputies, which caused unconstitutional conditions constituting a substantial risk to the health and safety of OJC and/or OPP employees and third parties, including Plaintiff.

42.

Defendants Gusman, and Ruiz were on notice that their failure to provide adequate training to OJC and/or OPP deputies caused unconstitutional conditions.

43.

Defendants Gusman, and Ruiz' deliberate indifference to the need for adequate training was an official policy giving rise to official capacity liability.

44.

The official policy of inadequate training of OJC and/or OPP deputies caused the violation of Plaintiff's clearly established Fourteenth Amendment protection from danger created or increased by state actors who act with deliberate indifference.

### THIRD CAUSE OF ACTION: FAILURE TO TRAIN IN VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AGAINST DEFENDANT GUSMAN, AND DEFENDANT RUIZ

45.

Plaintiff re-alleges paragraphs 1-29 of this complaint and further states that:

46.

Defendant Gusman, as Sheriff and head of OJC and/or OPP and Defendant Ruiz, as head of OJC and/or OPP, were the policymakers for the OJC and/or OPP.

47.

As policymakers, Defendants Gusman, and Ruiz were responsible for the training of deputies working in the OJC and/or OPP.

48.

Defendants Gusman, and Ruiz failed to adequately train OJC and/or OPP deputies, which caused unconstitutional conditions constituting a substantial risk to the health and safety of OJC and/or OPP employees and third parties, including Plaintiff.

49.

Defendants Gusman, and Ruiz were on notice that their failure to provide adequate training to OJC and/or OPP deputies caused unconstitutional conditions.

50.

Defendants Gusman, and Ruiz' deliberate indifference to the need for adequate training was an official policy giving rise to official capacity liability.

51.

The official policy of inadequate training of OJC and/or OPP deputies caused the violation of Plaintiff's clearly established Fourteenth Amendment protection from danger created or increased by state actors who act with deliberate indifference.

### FOURTH CAUSE OF ACTION: FAILURE TO SUPERVISE IN VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AGAINST DEFENDANT GUSMAN AND DEFENDANT RUIZ

52.

Plaintiff re-alleges paragraphs 1-29 of this complaint and further states that:

53.

Defendant Gusman, as Sheriff and head of OJC and/or OPP and Defendant Ruiz, as head of OJC and/or OPP, were the policymakers for the OJC and/or OPP.

54.

As policymakers, Defendants Gusman and Ruiz were responsible for the supervision of deputies working in the OJC and/or OPP.

55.

Defendants Gusman and Ruiz failed to adequately supervise OJC and/or OPP deputies, which caused unconstitutional conditions constituting a substantial risk to the health and safety of OJC and/or OPP employees and third parties, including Plaintiff.

56.

Defendants Gusman and Ruiz were on notice that their failure to provide adequate supervision to OJC and/or OPP deputies caused unconstitutional conditions.

57.

Defendants Gusman and Ruiz' deliberate indifference to the need for adequate supervision was an official policy giving rise to official capacity liability.

58.

The official policy of inadequate supervision of OJC and/or OPP deputies caused the violation of Plaintiff's clearly established Fourteenth Amendment protection from danger created or increased by state actors who act with deliberate indifference.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff HEATHER DIODENE requests this Honorable Court to grant the following relief, jointly and severally, against all Defendants:

A. Declaratory judgment that the Defendants' actions violated Plaintiff's rights as secured by 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and applicable federal law;

B. Compensatory damages for violation of Plaintiff's rights in accordance with the Constitution and federal law;

C. Compensatory damages for any and all incurred expenses, including medical expenses;

D. Damages for her physical pain and suffering as a result of injuries suffered due to Defendants' actions and inactions;

E. Damages for her mental and emotional distress;

F. Damages for her lost wages;

G. Punitive damages against all Defendants in their individual capacities;

H. Costs and attorneys fees; and

    I.   Any and all further relief that this Honorable Court may deem just and proper.

Respectfully Submitted:

/s/ Ryan Early
**JOHN J. FINCKBEINER, JR. (# 18211)**
**RYAN P. EARLY (#38530)**
2203 Pakenham Drive
Chalmette, La 70043
Office: (504)279-5177
Fax: (504)279-5375
john@jfjustice.com
rearly@jfjustice.com
*Attorneys for Plaintiff, Heather Diodene*