UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **HEATHER DIODENE** | ) | CIVIL ACTION NO.: 21-491 |
| | ) | |
| **VERSUS** | ) | SECTION: T |
| | ) | JUDGE GREG G. GUIDRY |
| **SHERIFF MARLIN N. GUSMAN, ET AL.** | ) | |
| | ) | |
| | ) | MAGISTRATE (4) |
| | ) | JUDGE KAREN WELLS ROBY |

**PLAINTIFF'S FIRST SUPPLEMENTAL AND AMENDING COMPLAINT**

**NOW INTO COURT,** through undersigned comes HEATHER DIODENE ("Ms. Diodene" or "Plaintiff"), who files her First Supplemental and Amending Complaint and with respect supplements and amends as follows:

I.

*By amending and supplementing paragraph 12 to now read as follows and to add paragraphs 12 (A)-(E) as follows:*

12.

On or about March 10, 2020, at approximately, 8:30 p.m., Plaintiff began her regular shift in the OJC and/or OPP Internal Processing Center as a Licensed Practical Nurse.

12.(A)

Ms. Diodene presence within the jail during her shift was limited to three areas: (1) the intake processing center, (2) the triage area, and (3) the nursing station, all of which were supervised by officers and monitored by surveillance at all times while she worked.

12.(B)

To reach these limited areas Ms. Diodene first enters the building through a security

1

check point, after which she took an elevator to the 2nd floor, then walked through another security check point, and finally to reach the area(s) where she would work, she was had to enter a locked door opened by a deputy with a buzzer. Ms. Diodene was not allowed to carry a concealed firearm into the jail, nor was she allowed to bring in any pepper spray.

12.(C)

Once past all the security and locked inside there was no safe room into which Ms. Diodene could retreat, nor any emergency exit. To exit she was required her to get through locked doors, the locked for which she had no control over.

12.(D)

Once inside, Ms. Diodene would go to one of the three limited areas to begin her shift and perform the following of her job duties:

a) For new inmates just arriving, she obtained medical histories and vital signs to determine whether any prisoners should be sent to University Medical Center or could/should be accepted into the jail;

b) For new and existing inmates she administer detox medication, take their weight and vitals and address any non-emergency issues they may have.

12.(E)

At the time she began employment with Wellpath, LLC, and prior to starting to work shifts at the jail, Ms. Diodene was assured by Wellpath, LLC that the Orleans Parish Sheriff would protect her from the inmates. Ms. Diodene was told that within Wellpath, LLC's contract with the Sheriff were specific safety protocols to comply with the contractually required protections which included, but were not limited to:

1) Ms. Diodene's was expressly limited to three (3) areas of the jail: (1) the intake processing center, (2) the triage area, and (3) the nursing station, all of which were supervised by officers and

        monitored by surveillance;

2)      All inmates, when present within these three (3) areas were handcuffed with their hands in front and accompanied by a officers/guard when being treated by Ms. Diodene or other nurses;

3)      Violent offenders were shackled to a stationary object limiting there reach or also not allowed to leave their cell. In the latter circumstance a deputy would walk with the nurse to that inmates cell so the nurse could give him his medicine.

4)      The number of inmates in Ms. Diodene's and other nurses' presence we very few and their behavior was controlled by the officers/guards. If the inmates were too rowdy the officers/guards would remove them and place them in a holding cell.

**II.**

*By amending and supplementing paragraph 17 to now read as follows and to add paragraph 17(A) as follows:*

17.

In response to the threats from Mr. Cook, Plaintiff began to look around for the Deputy who she was promised and was contractually bound to be accompanying Cook and/or closely supervising him while he was in her presence. Finally, out of the corner of her eye, Ms. Diodene could see Deputy Andrews on the other side of the cubicles and she yelled for him: "Deputy Andrews, I need your help!" Despite her desperate cry for help, Deputy Andrews took no immediate action to intervene.

17.(A)

Further, Ms. Diodene was so loud prior to and during the attacked that an Officer in a separate room from Ms. Diodene and Deputy Andrews, heard Ms. Diodene screaming through the wall at Cook, such that it was impossible that Deputy Andrews did not immediately hear her raised voice then screams.

3

**III.**

*By amending and supplementing paragraph 18 to now read as follows and to add paragraphs 18 (A)-(S) as follows:*

18.

Because of: 1) Defendants' inactions, their failure to handcuff, shackle and/or jail Cook, as they normally did other violent inmates like Cook; 2) Defendants failed to be visible and present at the intake facility while Ms. Diodene worked, as they normally were; and, 3) most egregious, because Deputy Andrews, who certainly heard Plaintiff's raised voice and later her screams, made a conscious choice to stay behind the cubicle instead of taking immediate action as he heard Ms. Diodene's screams for help, all of which were contrary to Defendants' own regular policies and a breach of Defendants' contractually created duties, Cook had the opportunity to and was allowed by Defendants to violently attack Ms. Diodene by wrapping his hands around her neck and choking her. Cook's grip around Ms. Diodene's neck was so tight that she began to lose consciousness, but not before she felt Cook drag her by her neck across the floor and pushed her into a squatting position.

18.(A)

In addition to those actions and inactions listed in amended paragraph 18, above, Defendants' inactions further created and/or increased the danger to Ms. Diodene in all those ways alleged in paragraphs 21-25 of her original Complaint.

18.(B)

Furthermore, because Ms. Diodene was locked inside the jail with no safe room into which Ms. Diodene could retreat, nor any emergency exits, nor could she carry a firearm or pepper spray, not only did Defendants place her in a position of danger, which she had never

been in before, but Defendants also effectively stripped Ms. Diodene of her ability to defend herself and/or escape danger.

18.(C)

Additionally, it is self-evident that the actions/inactions of all Defendants, including Deputy Andrews, constitute deliberate indifference. Defendants' failure to handcuff, shackle and/or jail and/or directly supervise Cook, which was protocol created because Defendants knew it was dangerous not to control the behavior of violent criminals, created a dangerous environment for Ms. Diodene. All Defendants knew the environment they created, by failing to follow their protocol, was dangerous. Also, the actions/inaction of each Defendant was a conscious choice wherein Defendants could use their authority to either act or not, and decided not to act.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff HEATHER DIODENE requests this Honorable Court to grant the following relief, jointly and severally, against all Defendants:

A. Declaratory judgment that the Defendants' actions violated Plaintiff's rights as secured by 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and applicable federal law;

B. Compensatory damages for violation of Plaintiff's rights in accordance with the Constitution and federal law;

C. Compensatory damages for any and all incurred expenses, including medical expenses;

D. Damages for her physical pain and suffering as a result of injuries suffered due to Defendants' actions and inactions;

E. Damages for her mental and emotional distress;

F. Damages for her lost wages;

G. Punitive damages against all Defendants in their individual capacities;

H.
I. Costs and attorneys fees; and

J. Any and all further relief that this Honorable Court may deem just and proper.

            Respectfully submitted:

            **THE LAW OFFICE OF JOHN J. FINCKBEINER, JR**.

            **/s/ John J. Finckbeiner, Jr.**
            JOHN J. FINCKBEINER, JR. (# 18211)
            2203 Pakenham Drive
            Chalmette, LA  70043
            Telephone: (504) 279-5177
            Facsimile: (504) 279-5375
            E-mail:John@jfjustice.com
                   rearly@jfjustice.com

**CERTIFICATE OF SERVICE**

     I hereby certify than on the   19th  day of  April, 2021 I electronically filed the foregoing *Plaintiff's First Supplemental and Amending Complaint* with the Clerk of Court, using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are participants in this matter.

          **/s/ John J. Finckbeiner, Jr.**
              **John J. Finckbeiner, Jr.**