UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HEATHER DIODENE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-491** |
| **MARLIN N. GUSMAN, ET AL.** | **SECTION: "P" (3)** |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed by Defendant ProAssurance Specialty Insurance Company ("ProAssurance").[1] The motion is opposed by Plaintiff Heather Diodene as well as the other defendants in this action—Marlin N. Gusman, Chaz Ruiz, Justin Andrews, and Chris Rubio ("OPSO Defendants").[2] In response to the oppositions filed by Diodene and the OPSO Defendants, ProAssurance filed reply memoranda in further support of its motion.[3] Having considered the motion, the parties' memoranda, the record, and the applicable law, ProAssurance's Motion for Summary Judgment (R. Doc. 161) is **GRANTED**.

**I.     BACKGROUND**

Diodene instituted this action seeking damages for injuries she sustained after she was attacked by an inmate at the Orleans Parish Prison ("OPP") in March of 2020.[4] At the time of the incident, Diodene was employed by Wellpath, LLC ("Wellpath") as a licensed practical nurse ("LPN"). Pursuant to a contract between Wellpath and the Orleans Parish Sheriff's Office ("OPSO"), Wellpath provided health care services to inmates and detainees in OPSO custody at various detention centers in the New Orleans area. Diodene alleges that on March 10, 2020, she was performing her job duties as an LPN in the OPP's intake processing center when an inmate

---

[1] R. Doc. 161.
[2] R. Doc. 168 (Diodene's Opposition); R. Doc. 170 (OPSO Defendants' Opposition).
[3] R. Docs. 173, 174.
[4] R. Doc. 1.

impermissibly entered the restricted area designated for medical staff only and violently attacked her. Diodene further alleges that as a result of the attack, she suffered physical injuries (including severe injuries to her neck and back), emotional distress, pain and suffering, and lost wages.

Diodene originally filed this action against the OPSO Defendants only, alleging they were liable to her for various federal constitutional violations, breach of contract, and for their negligence, gross negligence, and intentional failure to provide a safe place to work.[5] Diodene later sought and was granted leave to file an amended complaint to add ProAssurance as an additional defendant in this action. Diodene alleges ProAssurance is liable to her because on the date she was attacked there was in full force and effect an insurance policy ("the Policy") issued by ProAssurance that provided coverage to the OPSO Defendants for the injuries and damages Diodene asserts in this action.[6] Thus, Diodene seeks to recover directly from ProAssurance as the alleged insurer of the OPSO Defendants. ProAssurance now moves for summary judgment.

## II.    LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[8] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to

---

[5] *See* R. Doc. 1 (Complaint); R. Doc. 21 (First Supplemental and Amended Complaint); R. Doc. 46 (Second Supplemental and Amended Complaint).
[6] R. Doc. 115 (Third Supplemental and Amended Complaint).
[7] FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).
[8] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

either support or defeat a motion for summary judgment."[9]  "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."[10]

**III.    DISCUSSION**

ProAssurance contends summary judgment is appropriate because the Policy does not provide the coverage Diodene seeks.[11]  In her opposition memorandum, Diodene clarifies she is not asserting that the Policy provides coverage for her claims of federal constitutional violations or breach of contract, but that she is seeking to recover from ProAssurance on the basis that the Policy provides coverage to the OPSO Defendants for her claims of bodily injury.[12]  ProAssurance's motion for summary judgment therefore turns on one question: Does the Policy provide coverage to the OPSO Defendants for Diodene's bodily injury claims?

All parties agree that to resolve this question the Court must construe the Policy using the general rules for the interpretation of contracts under Louisiana law.[13]  Louisiana Civil Code article 2045 states, "[i]nterpretation of a contract is the determination of the common intent of the parties."[14]  To determine the common intent of the parties to an insurance policy, courts first look within the four corners of the policy itself.[15]  "Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning."[16]  If the policy wording at issue is clear and unambiguous, no

---

[9] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.
[10] *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).
[11] R. Doc. 161.
[12] R. Doc. 168.
[13] *See* R. Docs. 161-1, 168, 170.
[14] La. Civ. Code art. 2045; *see also Cadwallader v. Allstate Ins. Co.*, 2002-1637 (La. 6/27/03), 848 So. 2d 577, 580 (citing LA. CIV. CODE art. 2045) ("The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.").
[15] *See Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94), 630 So. 2d 741, 748 ("The meaning and intent of the parties to a written instrument . . . is ordinarily determined from the four corners of that instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument.").
[16] *Bonin v. Westport Ins. Corp.*, 2005-0886 (La. 5/17/06), 930 So. 2d 906, 910 (citing LA. CIV. CODE art. 2047).

further interpretation may be made in search of the parties' intent; the policy must be enforced as written.[17]

Here, ProAssurance contends the Policy does not provide coverage for Diodene's bodily injury claims against the OPSO Defendants for several different reasons. First, although the Policy provides coverage to an "insured" who becomes legally obligated to pay damages for bodily injuries, ProAssurance argues that none of the OPSO Defendants meet the definition of "insured" under the Policy.[18] Next, ProAssurance argues that Diodene's bodily injury claims are specifically excluded from the coverage provided by the Policy under the "Employer's Liability Exclusion" and the "Insured Bodily Injury Exclusion."[19]

For the reasons that follow, the Court concludes that Diodene's bodily injury claims are excluded from coverage under the Policy by virtue of the "Insured Bodily Injury Exclusion." Because ProAssurance is entitled to summary judgment on this basis alone, the Court pretermits any consideration of whether the OPSO Defendants are insureds under the Policy or whether the "Employer's Liability Exclusion" applies.

### A. The Insured Bodily Injury Exclusion

The Policy at issue contains a section on "COVERAGES." It describes "COVERAGE A" as "BODILY INJURY AND PROPERTY DAMAGE LIABILITY." The insuring agreement for COVERAGE A states, "Subject to the appliable limit of liability, we will pay those sums . . . that an insured becomes legally obligated to pay as damages because of bodily injury or property damage which occurs during the policy period and is caused by an occurrence." Directly below

---

[17] LA. CIV. CODE art. 2046; *Cadwallader*, 848 So. 2d at 580; *see also Carbon v. Allstate Ins. Co.*, 97-3085 (La. 10/20/98), 719 So. 2d 437, 440 ("An insurance policy should not be interpreted in an unreasonable manner, such as to enlarge coverage beyond what it reasonably contemplated by the terms of the policy."); *Peterson v. Schimek*, 98-1712 (La. 3/2/99), 729 So. 2d 1024, 1029 ("Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms.").
[18] R. Doc. 161-1 at 4–5, 8–9.
[19] R. Doc. 161-1 at 9–11.

the insuring agreement is a subsection titled "Exclusions." It contains a list of scenarios to which "[t]he insurance provided by COVERAGE A does not apply." Relevant here, it states the insurance provided by COVERAGE A does not apply to . . . [b]odily injury or property damage sustained by an insured whether or not such bodily injury or property damage arise out of the activities or operations of any other insured." This is the provision ProAssurance refers to as the "Insured Bodily Injury Exclusion."

ProAssurance argues that because Diodene is an insured under the Policy, her bodily injury claims are not covered, regardless of whether the OPSO Defendants are insureds under the Policy and caused her injuries. The Court agrees that, under the plain language of this exclusion, if Diodene meets the definition of an "insured," then her claims for bodily injury damages are not covered under the Policy.

### B. Diodene is an Insured

The Policy defines "insured" as "any person or organization qualifying as such under the General Liability Coverage Part Section II: Who Is an Insured."[20] And under that Section, "the policyholder," "any covered subsidiary," and "employees, other than executive officers, but only for acts within the scope of their employment by the policyholder or a covered subsidiary" all qualify as an "insured" under the Policy.[21]

Here, the Policy was issued to CCS-CMGC Parent Holdings, LP, and it names this entity as the "policyholder."[22] The Policy defines "covered subsidiary" as "any subsidiary so designated on the Coverage Summary."[23] And the Coverage Summary states that the covered subsidiaries are

---

[20] R. Doc. 161-3 at 84.
[21] R. Doc. 161-3 at 105.
[22] R. Doc. 161-3 at 81.
[23] R. Doc. 161-3 at 82.

"[o]n file with Company."[24] ProAssurance submits, and no party contests, that the underwriter confirmed the file includes Wellpath as a subsidiary of the policyholder, CCS-CMGC Parent Holdings, LP. Finally, the Policy defines "employee" as "a person on the regular payroll of the policyholder, an other insured[,] or a covered subsidiary . . . ."[25] No party contests that Diodene meets the definition of an employee under the Policy based on her employment with Wellpath, a covered subsidiary.

Accordingly, because Diodene was an employee of a covered subsidiary and was acting within the scope of her employment when she was attacked, she qualifies as an "insured" under the Policy. And because Diodene is an "insured" under the Policy, any bodily injury sustained by her is specifically excluded from the coverage the Policy provides, according to the "Insured Bodily Injury Exclusion."

### C. The Contract Between Wellpath and OPSO

Diodene and the OPSO Defendants all contend that to construe the Policy in this manner is inconsistent with the terms of a separate contract between Wellpath and OPSO. Indeed, Wellpath and OPSO entered into an "Agreement for Inmate Health Care Services" ("the Contract"), pursuant to which Wellpath agreed to administer health care services on behalf of OPSO to inmates and detainees in OPSO custody.[26] The Contract includes a section on "Liability and Risk Management."[27] It states,

> INSURANCE COVERAGE. [Wellpath] shall, at its sole cost and expense, procure and maintain during the term of this AGREEMENT, the following coverage and limits of insurance:

---

[24] R. Doc. 161-3 at 81.
[25] R. Doc. 161-3 at 83.
[26] R. Doc. 161-3 at 1–75. The Contract was originally entered into between Correct Care Solutions, LLC and OPSO. Correct Care Solutions, LLC later changed its name to Wellpath, LLC, and the parties amended the Contract to replace all references to "Correct Care Solutions, LLC" with "Wellpath, LLC." *See* R. Doc. 161-3 at 50.
[27] R. Doc. 161-3 at 23.

6

. . . .

> COMMERCIAL GENERAL LIABILITY. Comprehensive General Liability insurance in an amount not less than Three Million Dollars ($3,000,000) for bodily injury and property damage per occurrence and Five Million Dollars ($5,000,000) in the aggregate for bodily injury and property damage. **Such insurance shall also include:** 1. Contractual Liability, insuring the indemnity agreements required by this document. **2. Personal Injury Liability Endorsement including libel, slander, etc. and removal of any exclusions and/or claims by employees of [Wellpath].** 3. Policy to include OPSO as additional insured.[28]

Diodene contends ProAssurance's argument that her claims are excluded from coverage are directly contrary to the Contract language cited above. She argues the bolded language "logically reads that any policy exclusion of claims of Wellpath employees, of which [she] was one, were to be removed."[29] Thus, according to Diodene, to conclude that the Policy's exclusions bar coverage for bodily injury sustained by her would ignore Wellpath's obligation to provide coverage mandated by the Contract with OPSO. She further argues that "any ambiguities in the contract regarding the responsibility of the parties should be looked at in the light most favorable to the non-drafting party" and that because "there are equally valid interpretations of the intent of the language in the Contract[,] "[s]uch ambiguity would preclude summary judgment."

Diodene's arguments are flawed for a number of reasons. To start, she relies on language from the Contract between OPSO and Wellpath to support her argument for coverage under the Policy between ProAssurance and CCS-CMGC Parent Holdings, LP. As discussed above, the language of the Policy clearly and unambiguously excludes from coverage bodily injuries sustained by Wellpath employees. To the extent Diodene is arguing that ProAssurance should nevertheless be liable for such coverage because Wellpath was contractually obligated to procure

---

[28] R. Doc. 161-3 at 23 (emphasis added).
[29] R. Doc. 168 at 6.

7

it, the Court rejects this argument. The coverage *Wellpath* was or was not contractually obligated to procure pursuant to the Contract with OPSO is irrelevant for purposes of determining what obligations *ProAssurance* owes to any insured, which is based on the coverage actually procured, according to the terms of the Policy.

As to Diodene's argument that summary judgment is precluded because of ambiguity in the language of the Contract regarding Wellpath's obligations to procure certain insurance, this argument must also be rejected. Here, the motion for summary judgment is resolved based on the interpretation of the language of the Policy issued by ProAssurance, not the Contract between OPSO and Wellpath. Thus, any ambiguity in the Contract is irrelevant to the instant motion and cannot serve as a basis for denying summary judgment.[30]

### D. Prematurity

The OPSO Defendants separately argue that the motion for summary judgment should be denied as premature because the Policy contains an arbitration clause that requires "[a]ny dispute, claim or controversy arising out of, relating to or in connection with [the Policy] . . . be submitted to binding arbitration in accordance with Title 9 U.S.C. § 1 et seq. (the Federal Arbitration Act) and the Commercial Arbitration Rules of the American Arbitration Association."[31] The OPSO Defendants contend this matter should be stayed so that the parties under the Policy can resolve the issue of coverage through arbitration. Their opposition memorandum, which was filed on May 7, 2024, contains a footnote that states, "The Sheriff will be filing a separate Motion to Stay and Compel Arbitration."[32] To date, no such motion has been filed. Nor is there any evidence in the

---

[30] The Court does not specifically address the argument made by the OPSO Defendants regarding the Contract, see R. Doc. 170 at 7, because the argument is conclusory and undeveloped, but to the extent a response from the Court is warranted, the argument fails for the same reasons Diodene's arguments fail.
[31] R. Doc. 170; *see also* R. Doc. 161-3 at 109.
[32] R. Doc. 170 at 5 n.5.

record that any party has taken any steps to initiate arbitration proceedings related to the dispute at issue in this motion. The Court therefore rejects the OPSO Defendants' argument that the instant motion for summary judgment is premature.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that ProAssurance's Motion for Summary Judgment (R. Doc. 161) is **GRANTED**, and Plaintiff Heather Diodene's claims against ProAssurance are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 24th day of March 2025.

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**